The next case is 2024-603-70 Priscilla Sterling et al. v. City of Jackson, Mississippi et al. You may proceed. Good morning, your honors. I'm Mark Challis from Nashville, Tennessee. I'm here with my co-counsel Michael Wallace from Jackson. We're here on behalf of the plaintiffs in this action who include Ms. Becker, the mom of a special needs child with severe medical issues, Ms. Sterling, a high school teacher, Mr. Miller, a student at Jackson State University. This case arises from the Jackson Water Catastrophe, a catastrophe years in the making. This is a case about government officials who, as we've alleged, through a lengthy series of bad conduct, poisoned their own residents' water with lead. They piped that water to their residents' homes, and then they lied about the safety of the water, repeatedly falsely stating that it was safe to drink when the city officials knew it was not safe. They peppered in, to be sure, a few small truths with these very large lies, but that only served to make their lies more believable. The water was not safe. Ingesting lead causes severe and permanent bodily harm. For children, it causes lost IQ and developmental disabilities, and for adults, it can cause cardiovascular and kidney damage. In fact, ingesting lead in any amount is harmful, particularly for children. This course of conduct by city officials played out over months and years, giving defendants more than ample time for deliberation. Now, this isn't an after-the-fact, second-guessing of split-second life-and-death decisions by police officers, for example. This is an unusually bad course of conduct that's unlikely to repeat itself in the small towns across Texas, Mississippi and Louisiana. The city of Jackson's conduct in this context, and the overall context matters, amounts to conscience-shocking behavior. Jackson's conduct violated the long-recognized 14th Amendment right to bodily integrity. The 14th Amendment's prohibition on state deprivations of life and liberty speaks directly and unambiguously to the conduct alleged here. The plain text of 42 U.S.C. 1983 provides a cause of action to vindicate the constitutional rights of issuing. Accordingly, we are here asking this court to reverse the district court's dismissal of the case at the threshold on a motion to dismiss and a motion for judgment on the pleadings prior to any discovery and prior to developing any factual record. I would like to address three principal issues in my argument today. First, what is the constitutional right at issue? The right to bodily integrity, which is long-established by the Supreme Court precedent and long-recognized in this circuit. It was clearly established at the time of the alleged bad conduct here, such that the individual defendants are not entitled to qualify immunity. Number two, the defendants' alleged conduct in both creating the lead catastrophe and seeking to cover it up by lying shocks the conscience, as that standard is defined by the Supreme Court and this court. The Supreme Court and this court have held repeatedly that the shock the conscience standard is met, where there is ample time for deliberation, by establishing that defendants acted with deliberate indifference by, among other things, consciously disregarding a known and excessive risk to the victim's health and safety. And that is, in among other places, the Hernandez case from this court in 2004. Now, to be clear, we're not basing our case on allegations of inaction. We've alleged in detail the affirmative conduct by the defendants. That starts at ROA 1460. And the third big issue I'd like to address is why this circuit should join its 10 sister circuits covering 44 states in explicitly recognizing the state's created danger cause of action as a means to vindicate the rights guaranteed by the Constitution. The unambiguous text of Section 1983 supports this cause of action. There is also a fourth issue, which is whether this court should exercise its supplemental jurisdiction over state law claims. And I think that rises and falls with resolution to the other three issues. I am, at this point, open to the court's procedural posture, because I think, in this case, it matters. There is no well-developed factual record here. We're here on threshold Rule 12 motions. That we are at the early stage of the proceedings is particularly important where there are constitutional rights at issue. Counsel, as I understand it, your claim, your initial claim, is a substantive due process constitutional claim, specifically state-created danger. Is there any daylight between what you're saying as a substantive due process claim and a state-created danger claim? I think so, Your Honor. We have made two, I think there are two roads to get to the vindication of the rights at issue. First, we've made a substantive due process claim for the violation of the right to bodily integrity. Secondly, we've also alleged that the defendants here have violated the state-created danger claim, which, to date, this court hasn't explicitly recognized. So we have two claims, the substantive due process claim for violation of bodily integrity and the state-created danger claim. We have not recognized that, but for this case, as we consider it, correct? The latter? I believe that's right, in terms of explicitly recognizing it. That's right, Your Honor. Could I ask two questions? One's a pleadings question, one's a law question. Could you just direct me to the single paragraph in your complaint that is most equivalent to Defendant O'Malley in Brazil, which I think you handled? In other words, a person with knowledge in a pivotal role who lies to residents and regulators that water that's poisoned is safe. What would be the most shock the conscience allegation? Just one, the most shock the conscience question. The law question is the Sixth Circuit, which of course I think is the framework you're most urging, distinguishes the Second Circuit. Would you agree you would lose under the Second Circuit Bensman test if I read that to be officials who are making statements responding to a public disaster have to be shown to have an intent to harm? Those are my questions. Best paragraph allegation of shock the conscience, and would you lose under the Bensman test if it's read not to just pertain to emergencies, just public disasters generally? Yes. So with respect to the first question, I have left my complaint on the desk. What I would ask, if Your Honor is okay with it, I have time for rebuttal tonight. Yes, thank you. Okay. And with respect to the question about the Sixth Circuit versus the Second Circuit, the Second Circuit case, and I think this is a big difference, arose in the context of emergent situations. And the issue here came with... Only because I have very little time. The hypothesis, one I may not think is true, but you recall the arguments are saying Bensman is different than the earlier Second Circuit case. There was less of an emergency. So it really is Judge Newman saying, we want officials to speak about public disasters, and therefore shock the conscience liability requires an intent to harm. Right. Well, we think here under these circumstances, you have to look at the entire... So I will say that under the Sixth Circuit case, we win. Under the Second Circuit case, I think it's more problematic. But I think we have to look at the entire... As the Supreme Court is counsel, we have to look at the complaint as a whole. We have to look at the circumstances as holistically. Here, this isn't a circumstance that happened by anything other than the defendant's own actions. They created the catastrophe. They, in this case, caused the lead to be in the water in the first place. They piped it into residents' homes, and then they lied about it. I think that's qualitatively different from a circumstance where something bad happened, and then in the rush of trying to react and give information to the public, the public officials had said something wrong, or even lied. I think it's different in this context. So why would you lose under the Second Circuit case? Well, I don't know that we would, necessarily. I think it's a stricter test. Or you said it would be more problematic. Why would it be more problematic? Because I think it's a stricter test, and we haven't alleged a specific intent to injure through the lies here. What we've alleged is a more holistic pattern of very bad behavior over time when they had ample time to deliberate. So it's not just the lies that are the problem. It's the lies against the backdrop of creating the catastrophe in the first place over months and years. So I don't know that we lose. I'm not necessarily conceding that. I just think that that is a higher standard, perhaps, in the Sixth Circuit. But I think that's not the standard in this circuit. Counsel? Counsel? How low does the pH have to drop before the conduct of the city is conscience-shocking? Yeah, and you're right. It's not just an objective measure. The pH is 2, and the city doesn't do something. They've shocked the conscience. It's the whole tapestry of things. How high does the lead concentration have to rise before the city is shocking the conscience? Right. Well, I think it's the same answer. I mean, we have an objective standard in federal law and in state law of 15 parts per billion being the action level. Well, that's a standard from the EPA, right? Is that in the Due Process Clause of the Fourteenth Amendment? No, sir. So how would a city officer who sees an action level of 15 ppb of lead know that they were violating the Constitution by failing to intervene? Let's put the lies aside for a second, because I take your position as that there's two different problems with their independent. One is the causing of the state-created danger and the conscience-shocking conduct, and the other is the lying about it. So if we just do the first one first, how would a city officer know, I got a water report at 15 ppb at one test site, right? Because this was never more than just a fraction. Not that it's not serious, but you're talking about 11 percent of homes in one sampling from 2016. How do you know when it crosses the line of the Fourteenth Amendment? Right. And I think it would be difficult to be candid for one instance of one test to say that that in itself shocks the conscience. And that's what the Supreme Court has said, and I was about to reference this, the Volo case, the NRA versus Volo case, which is a Supreme Court case from two years ago, a year ago, which said that you have to look at the complaint as a whole. And here you can extract certain facts and say, well, there's this one test where it was, you know, 16 parts per billion. Government didn't do anything that shocked the conscience. Probably not, but what we have here is a course of conduct over the years. They knew there was lead in the pipes. They knew that the acidic water at a low pH would cause the lead to leach out. They knew they were getting these very widespread, more widespread than Flint, readings of excessive lead in the water. And they continue to choose to do things that actually made it worse. But at some point, your position has to be that at some point we cross over from no Fourteenth Amendment violation to a Fourteenth Amendment violation. What day was that? Well, I don't have an answer for that, but there has to be a day, right? There was a day prior to 2010. That's the first allegation, I think, in the complaint where there's no violation of Fourteenth Amendment. Then there's a bunch of allegations from 2010 to 2013. You've got some stuff in 2016. You have the failures in 2022. Somewhere between 2010 and 2022, there's a Fourteenth Amendment violation, but you don't know the day. I don't know the day. I can say to you that the moment that Mayor Yarbrough got up and said, We are not Flint. It's safe to drink our water. That's the moment in which they crystallized. I think that's something we have to sort out in discovery, something ultimately you find or in fact, either on motion for summary judgment or trial, we'll have to sort out. But for purposes of our complaint, by the time we filed our complaint, we've alleged that that tapestry of bad conduct, shocks of conscience, shows a deliberate indifference to a known safety risk and is actionable. I don't have the exact date at this point that that cause of action arose. We think we filed timely, for whatever that's worth. What would be the theory that you filed timely if you don't know when the cause of action arose? Well, we know that it could not have arisen at a point prior to the statute of limitations running in the sense that was an ongoing course of ponding. And it occurred right up until a year or so ago when the federal government basically took over the water system. But you don't have an allegation of the accrual? I don't right now. And they haven't raised that argument. Counselor, you were right here. You're poured out on the 12B6, right? Yes, sir. Well, we have legions of 12B6 cases here. And of course, the Supreme Court does also. So what's your strongest, best case in the 12B6 arena that gets you to the next stage, whether that's summary judgment or whatever, with all those facts that are out there? But you're poured out at 12B. So what's your strongest case that we have, or the Supreme Court, that moves the needle for you on that? Because if we don't get past that, you don't ever get to make all these other fact arguments, right? That's right, Your Honor. I would start with the text of Rule 8, which says it's a short plain statement of facts that's required. And I would refer to that NRA v. Volo case from 2024, which is 602 U.S. 175, where the NRA, the National Rifle Association, sued state officials in New York. And there, the Second Circuit... Let me redirect you. Yes, sir. What's your best, strongest Fifth Circuit case under 12B? I mean, there are lots of cases out there, and I'm not limiting you, but it's helpful if you start, you know, I mean, we just have Buku 12B6s. We get them in all kinds of contexts, 1983, et cetera, et cetera. But it's 12B6 that says what it says. So they're basically saying there's no circumstance under which you can, you know... So just give me, I'm not trying to trick you, just what's the best, strongest case, Fifth Circuit-wise, that lets you move to the needle for us to say, no, 12B6 is not it. Move to the next stage. I mean, you might get poured out on some judgment or whatever. That's all I'm asking. Sure. I mean, if it's in the brief, just tell me. I'll find it. I probably read it. I have an answer, Your Honor. It's the Dill v. Jewell case, 151F4-236 from this court, 2025. It was a Rule 12 motion, and this court said, this court accepts well-pleaded facts as true and views all facts in the light most favorable to the plaintiff. This is the question that Judge Sutton writes about in his denial of concurrence in denial of en banc in Girton, right? Yes, sir. It is. And then he makes a lot of cautions, but ultimately said, we have to be able to distinguish between shocking and bungling. We've got to get discovery. We've got to get discovery. We've got to credit the plaintiff's allegations that their theory of the case is correct. And Judge Sutton was very skeptical about the Girton case, and he made that very clear. He thought there were lots of problems with that case, but he, recognizing the Rule 12 standard, the text of Rule 12, the text of Rule 8, and the Supreme Court's very clear guidance on that, and Sixth Circuit guidance, which is consistent with the Fifth Circuit guidance, he recognized that the proper course on a Rule 12 motion is to let the case proceed, let it proceed through discovery, and then they can revisit, the defendants can revisit their arguments, which are really factually based. And to the extent they're legally based, they're better decided on a summary judgment motion with the benefit of a fully developed factual record. So is the question of shocks to conscience or deliberate indifference just a matter of pleading? In other words, once you plead it, you get to go further? I thought you had to have facts that implied, strongly implied that. You do, Your Honor. I agree with that. And we do here. It's not just a matter of saying the magic words that, oh, we pleaded this standard. You have to demonstrate with a short, plain statement of your claim that you have pleaded plausible facts that can make that, make, meet that standard. And do you have any case that's even other than Sixth, other than the Flint, Flint, Michigan, any other case that's even remotely similar to the facts here, which have to do with a grossly inadequate provision of utility service? I would push back, Your Honor, on the framing. We don't allege that this is a grossly inadequate provision of utility services. We allege that these actors caused lead, toxic lead to be in the water, piped it into these people's homes and then logged it. That's different, I think. Well, what I'm thinking about is the city of Houston, which in some areas of town has been notoriously inept at removing, or New Orleans for that matter, habitations that are tumbled down, removing piles of trash that attract rodents and vagrants and that kind of thing, creating very obviously dangerous situations. And then the residents complain and the city says, oh, yeah, we're going to get to it. Oh, yeah, we're going to get to it. How do you just, you know, is there any case like that that's gone beyond the pleading stage? I mean, it shocks my conscience, but who am I? I'm just a judge. Right. Well, we are not alleging here just bad government. It is bad government. No question about what they've done is bad government. But it's far more than that. Here we have, I think it's an unusual set of facts. They caused the lead to be in the water. They, over the course of months and years, they knew what they were doing and they continued to choose to do it. They piped it into people's homes, then they lied to them about it. And people drank the water and were harmed. I think that's qualitatively different from the situation where there's just an inept government. And that's not Slight difficulty here is the majority below, maybe persuasively, said qualified immunity for the individuals. So if all that's left, accepting that would be Monell, there's the oddity that, back to my O'Malley question, that we'd be premising city liability on a lower level water official, not mayors and high level people, final decision makers. So, yes, the majority did find that there was a qualified immunity, accepting that qualified immunity, even though it finds no basis in either the 14th amendment or section 1983, accepting that that's a viable doctrine. We believe that these rights were clearly established and that they should not be entitled to qualified immunity. So let me start with that. Secondly, we're talking about the mayor and we're talking to the public works director. These are final decision makers, very high up. We're not talking about low level folks. We're not talking about sort of line level operators. I see my time's expired. I will get back with that answer to your question, Your Honor. Thank you. Unless there are other questions. I think you said time for rebuttal. Thank you. Good morning, Your Honors, and may it please the court. Aaron Murphy on behalf of the Camping Safety as an amicus in support of the plaintiffs. As we explained in our amicus brief, my client's principal interest here is in state created danger claims, which we've asked this court to recognize or at the very least to not definitively reject in this case. So I just want to start by being clear about what it is that we are asking this court to recognize here. Many courts have approached state created danger claims through a substantive due process lens, essentially thinking about it as a question of whether there is a freestanding constitutional right to be free from state created danger. That is not the argument that we're advancing here. We're instead focused on the argument that is laid out by Judge Higginson in his concurrence in the Covington County School District case by Judge Dennis and his concurrence below that's focused on this through the lens of 1983. Ms. Murphy, do you take any position on whether the Sterling plaintiffs have articulated that non-freestanding approach? I think they have articulated both the 1983 argument and I think they've also articulated perhaps the freestanding approach. My colleague can better answer that question. But I think that the right way to process a case like this in the way that we think about state created danger doctrine is 1983 has the action for subjecting to a deprivation of constitutional rights and for causing someone to be subjected to a deprivation of constitutional rights. In either path, you need a deprivation of a constitutional right, an underlying deprivation of a constitutional right. So the state creation of danger is not itself the constitutional right that you have a freedom from. Where in jurisprudence, not this court, but where in jurisprudence has the state created danger been recognized in a case like this where the harm was generalized as opposed to particularized to individuals? Sure, so I mean just to be clear we haven't taken a position on this particular case here. I understand that but you're up here arguing we should acknowledge the state created danger doctrine and to do so in this case we would have to recognize a generalized harm across the public of the city of Jackson. Well, you wouldn't have to do that to recognize the doctrine. You'd have to do that to recognize that there's state created danger. Why would we recognize it if it didn't apply in the case? I mean that's why we're here to encourage you to recognize it or at the very least again not reject the doctrine here. But I will to respond to your question about whether it needs to be focused on a generalized versus a particularized harm. I think if you process it as a statutory cause of action that becomes a question of proximate cause. You know if what 1983 is doing is what its text says which is providing a cause of action. Which circuits test would you have us adopt? I think in the case below the majority adopted the Irish test from the first circuit which said that you could not have a generalized, it'd have to be a danger specific to the plaintiffs getting back to Judge Wilson's question. So if we adopted the Irish test you would agree that the generalized harm such as the harm that's alleged in this case would not be permitted under the first circuit case. So I'd be reluctant to encourage you to outright adopt any circuits test because to be candid no circuit has come at this through the 1983 laws. The circuits have generally approached this by and the first circuit in particular specifically said it was a substantive But the counsel that preceded you said 10 other circuits said. They have recognized. Sure and I agree that they have recognized a state created danger claim and we think you should. But when it comes to the actual reasoning and contours of it I think you know this court hasn't weighed in yet and I think it would be right for this court to say well maybe we need to look at it a little bit different way. Maybe some of these courts have focused on the wrong thing in asking whether there's an independent freestanding substantive process right when the answer is really found in text of section 1983 and if it's in the text of section 1983 then I think what you look to to answer questions about what kind of claims are within and without the doctrine. Do you think the argument undercuts on the qualified immunity side when we say that there are a variety of tests and that this circuit has not adopted one and that we should look at it anew and perhaps adopt some test. Would you agree that that undercuts the qualified immunity? So I think the qualified immunity analysis is impacted by whether you come at this through the substantive due process lens or the 1983 lens because if you come at it through the 1983 lens then I think the right way to start answering the substantive due process question is is the right that someone's saying they were deprived of one that is clearly you know has been clearly recognized and and if the right is not the right to be free from state created dangers but rather is you know the right to be like the right to life and the state caused a deprivation of your life I think the qualified immunity analysis is correctly focused on the that right to life is clearly established and you know you don't necessarily have a secondary overlay of have we clearly established exactly how 1983 itself should textually be read and apply in a particular context. I see my time is up unless anybody has any further questions. Thank you we have your argument. We'll hear from Mr. Webster. Good morning your honors. May it please the court. I'll start my argument with the state created danger position that my friends have taken which is there is an avenue through 1983 to assert a right for state created danger and that fails for two reasons. First of all 1983 cannot be used to create substantive rights. It is a vehicle through which cost through which federal excuse me constitutional rights are asserted. It allows individuals an avenue through which to sue state officials. It does not in and of itself create rights. Looking at my friend's briefing what they argue is is that 1983 which is derived from the Ku Klux Klan uh because the impetus for the law was the Ku Klux Klan somehow shows that there was this idea of a third party harm that 1983 was meant to remedy and that's simply not true. The Supreme Court decided in Carter at 409 U.S. 426 that while the Klan itself provided the principal catalyst for the legislation the remedy created in section one was not a remedy against the Klan or its members but against those who represented a state in some capacity were unable or unwilling to enforce state law. Moving to the state to the bodily integrity argument the plaintiffs argue two factual points that are when you view their pleadings in the entirety are not true. First they argue that the city of Jackson piped lead into the water and that's simply not true from plaintiff's complaint. They acknowledge that both Keisha Powell and Robert Miller represented to the public that at the time the water left the water treatment plant there was no lead in the system. Plaintiffs acknowledge that that statement is true. There was no water piped into the system at the time that it left the city of Jackson water treatment plant. The second point that is that the city of Jackson lied about water and lead and as an initial matter the court must consider the plaintiff's complaint as a whole as a whole. Exhibits attached to the complaint are part of the complaint for all purposes including on a motion to dismiss and that's from this court in the Riley case 355 F 3rd 375. A pleader may be defeated by their own pleadings. The court said that in Simmons 113 F 2nd 813. Here because there are 45 references to articles and seven exhibits the court must do more than simply rely on the allegations in the complaint. As Judge Englehart pointed out in his dissent the court must consider the well-pleaded allegations, disregard those that are conclusory or contradicted and assess the reasonable emphasis that can be drawn from the remainder and here is what the complaint says in total. What the complaint shows is on January 29, 2016 Keisha Powell made the following statement which included in the complaint. This is not a situation where you have to stop drinking the water. What the plaintiffs leave out are two other statements that she made in the same article during the same press conference which is the city is required to take additional compliance measures and people must understand how they should be flushing their internal plumbing system before using the water. Those are measures you take. On the same day January 29, 2016 according to the complaint at record site 1482 the city sent out notices to all customers that there was a lead and the complaint shows at record site 1576 that the city of Jackson provided educational pamphlets to all water users no later than February 29, 2016 coming into compliance with the Mississippi Department of Health compliance plan. Now record site 1576 is one of the exhibits that plaintiffs rely on and incorporate fully as if restated here in their complaint and the court again can consider it for any purpose including on a motion to dismiss and with that I will open the I will yield my time for questions. If we do not agree that the articles were incorporated because they were specifically not incorporated and the plaintiff can be master of his or her own complaint would you would you still win and why? I would still win because for two reasons. First of all exhibits three four and seven demonstrate that the city of Jackson provided notice of a lead exceedance well and the complaint excuse me you can look at exhibits three four seven and the complaint it shows that the city of Jackson provided notice to the resident that there was a lead exceedance and that there were certain precautions that you should take including precautions that young children should take including precautions that pregnant women should take including precautions that people with weakened immune systems should take and then including precautions that the general public should take such as not using hot water for cooking or or engaging in flushing for two minutes before consuming the water and plaintiffs do not allege and they never argued in their brief that those precautions did not mean did not mean that people could not consume the water unsafely. The precautions were given and there is no to be clear there's no allegation that those precautions were insufficient. So legally is it fair to say from what you're arguing you accept the second circuit and the sixth circuit's framework for for analyzing bodily integrity claims you're just distinguishing them based on the pleadings in other words you're not saying if there were a Chernobyl type set of lies oh you could drink the milk that that would not be actionable. Yes sir. You're accepting the framework that the sixth circuit in Girton and Brazil announced yes or no no framework the legal framework you're the legal framework with regards to are you accepting that there can be a bodily integrity claim in a poisoned water disaster if officials say knowing that it's unsafe they say go ahead drink it it's not flint do you accept that there could be a claim and your argument to us is they just didn't allege it. There could be a claim if there was no rational basis for the city to take action that poisoned the water and then the city without any rational basis lie and that's not what we have here. I heard my friends say that the acts the inaction that the city took would not provide a basis for their bodily integrity claim but it was the action that the city took and when you look at those actions as a whole there was a rational basis for each decision there was a water switch where 16,000 users were switched from well water to surface water that's not a fact that's in dispute we all agree on that the reason for that change is shown in exhibit seven to their own but I guess to go back to my same question isn't this what Judge Sutton speaks about if you're familiar with his separate writing that if we're going to get into whether or not there was a rational basis the plaintiffs get discovery to find out if instead there was a diabolical decision to tell people keep drinking something that would poison them so if you're familiar with Judge Sutton's separate writing how is this case different than what he spoke about? First of all Judge Higginson I am not familiar with Judge Sutton but I would point this where there is no dispute of material fact it is for this court to make the determination as to whether the conduct alleged is egregious so that it shocks the conscience and what I'm arguing is is that taking plaintiff's complaint as true there is no factual dispute and at that at this point it's disappointing you can't speak to that opinion because to me it's very central here can I shift to the second circuit? Does the second circuit pair of cases help you or hurt you because one way of interpreting what officials were saying about 9-11 air pollution was we need to encourage them to speak they just didn't know it's an immediate emergency we need a heightened shock the conscience standard but that wouldn't necessarily help you in a case that transpires over two years. Well the difference is is that in Lombardi there was an immediate need to get first responders into 9-11 to help folks but in Benjamin there was a period of time between 9-11 and when statements were made to the general public and in that case the court still found that an intent to harm was a required element because there was a rational basis for the public pronouncements that were being made in which the state officials had to consider political and economical and social considerations in how and what decisions on public pronouncements they made. So your argument turns on whether there was a rational basis for everything Jackson did? Yes. Mr. Webster I'd like to come back to the first over here I'd like to come back to the procedural issue I want to be sure I understand your argument and your statement that the plaintiffs may be defeated by their own pleadings. Are you alleging that to the extent statements in the exhibits or attachments conflict with statements in the complaint those governed or are you arguing that the court can consider additional facts in the exhibits and attachments that weren't alleged in the complaint or neither what what exactly are you focusing on when when you're talking about the attachments defeating the plaintiff's complaint? I think our argument is closer to the latter but what I'm what we're really arguing is is that plaintiffs cherry-picked certain quotes that were made by city officials and when you look in the same articles at the time that the cherry-picked statement was made the city officials made other statements and that the court should consider the entire record of what the city officials said as opposed to just the cherry-picked statement and the argument that was made in the majority opinion was that considering those articles or considering the whole statements as opposed to the cherry-picked statements wouldn't even pass a summary judgment standard because those statements would be hearsay but that's not true. These statements are not being offered for the truth of the matter asserted. It's not that if you follow these precautions then you're water safe. They're being provided for notice that this is what the public officials said. They said that there was a lead exceedance and then they said there are certain things that you can do to consume the But this isn't even at the summary judgment state. They really need to do discovery. Why can they not be given discovery? Because judge there have been a number of occasions where the supreme court has allowed cases of asserting substantive due process to be decided on the alleged conduct here. The court is in a position to decide whether the underlying conduct is egregious to the point of being conscious shocking. Counsel, the attachments, getting back to judge Ramirez's question, there are two kinds of attachments or references in the complaint. There are news articles or journals where articles are written about the circumstances and although when you talk about hearsay we can't use the articles in terms of factual content but they can be considered for notice what was publicly disseminated information at the time of the publication. What about the other attachments and references such as an EPA report or a Mississippi DEQ report where there's a link in a footnote or something of that sort? Can we take judicial notice of those as government documents? Under this court's law you can take notice of exhibits incorporated into the complaint for any purpose. So it could be for notice purposes or for factual purposes. Now judge correctly pointed out these seven exhibits are different from the articles in that the seven exhibits are primary documents. They're reports from the EPA, the Mississippi Department of Health compliance plan. There are notices from the city of Jackson explaining what precautions to be taken in order to consume the water which are separate from the articles where they talk about what city officials said. Seeing no more questions I would like to briefly conclude. Could you address this state created danger document, the danger doctrine, I'm sorry, and discuss whether or not you take a position on whether or not the court should address it if the court finds that it hasn't been pled here? Does the court need to address whether it could in an appropriate case exist? So the court need not address the issue in this case. As the Supreme Court counseled in Axelrod, excuse me not Axelrod, Ashcroft, if the case, if the court's decision does not have any basis on the case then the court should not consider adopting a new doctrine and the plaintiffs failed to allege a state created danger case on two fronts. First they allege generalized danger as opposed to danger to a known party and second they failed to allege a third party injury which is in the standard articulated by this court in a number of cases including Alcorn and a number of other cases where this court has said a third party injury is a necessary component of making a case for state created danger. So the courts and plaintiffs do not even attempt to argue that they have alleged a third party harm in their Do the plaintiffs urge only a freestanding theory or do they also argue the theory under section 1983? They argue under they argue it under 1983. So you believe they argue it under 1983 but not as a freestanding substantive due process right? I think it no I think I believe they argue it as a 14th amendment of a deprivation of the of the a substantive due process right to against state created danger and then they assert it under 1983. Okay. But they do allege it as a freestanding claim. That's different than what the amicus is arguing isn't it? It is. Did they ever argue it in the way that the amicus is arguing it in your opinion? In their justificate in their argument as to why the court should adopt the state created danger they do argue the text and the history of 1983 from the enactment of the Ku Klux Klan Act to the enactment of section 1983. And as I stated during my introduction the Ku Klux Klan Act does not provide the historical pedigree that they believe it does for a state created danger claim. Does it cause any kind of problem if this court never articulates that or adopts this theory given you know in Pearson when we deal with qualified immunity we can go with either either step one or step two because and there's a viewpoint that if we don't ever articulate rights then it will never ever be established in your circuit. Does that just is that an issue in this case and do you have anything to say about that? Well again going back to my first point whether this court adopts state created danger or not it will have no bearing on the court's determination because plaintiffs have not alleged a viable state created danger claim. To the second question does this circuit have to adopt straight state created danger so that plaintiffs may have a vehicle through which to prosecute their claims and the answer is no your honor. What and Julie Steiner points this out in her Miami Law Review article is is what state created danger is has become or is becoming is a font for tort law and the plaintiffs have an avenue through which to pursue and seek redress against the city of Jackson which is tort law and this court need not adopt a state created danger theory in order for plaintiffs not to get their day in court. With that I'll briefly conclude the supreme court has been clear that intermediate courts should be very hesitant to expand the limits of substance use process. Here what plaintiffs are asking this court to do is second guess decisions of state officials and whether those decisions were rational or not and raises the provision of competent municipal services to a constitutional level and that's simply not what substitute process is meant to address. Substitute process is meant to address arbitrary government action and that is not what we have here and for those reasons we ask that the court affirm the district court's decision. Thank you we have your argument. Thank you your honor so so Mr. Webster told us that you have not you have not you have not argued a third party harm would you respond to that? Yes sir so in the context of the state created danger claim you're right we have not alleged that a third party has come in and caused in some intervening way the actual harm. We've alleged it as the state created the danger which ultimately led to the harm from the water and the pipes to the homes to the bodies of folks. So we did not propose a framework for the state created danger that would require a third party harm. We don't think and other circuits have adopted it without that requirement of third I will address something on that though which your honor mentioned there is this I think the pithy phrase was where section 1983 meets catch 22. I think there is a little bit of a circularity in that this court hasn't explicitly recognized the state created danger cause of action yet in a way that would give us guidance for how to plead it so if this court does recognize it we would ask that we have an opportunity to digest the court's opinion on remand and amend to plead it. In conformance with this court's ruling. So let me pick up if I may with the last point which is the rational basis for how the city acted. I think this is what Judge Sutton was getting at in his concurrence which is that those are the kind of things and I think that those are the kind of things that we don't know until we get discovery. They may have a rational basis. We're have very good arguments for why our case isn't a very good one but that's not the province of rule 12. That's not something that should be done on the pleadings. This court's recognized that and the Supreme Court has recognized that in the NRA case that I mentioned earlier. To answer your question your honor and I had too much time I've got more than one answer for you but there are I think four paragraphs and it's I think it's very difficult to extract just a paragraph. Usually you can point to one best one. Colleagues may have other questions which is which is the I asked you specifically which is like O'Malley person in a pivotal position with personal knowledge still lies to residents and regulators. Do you have any paragraph that points to that? Yes paragraph 150 RLA 1481 the public works director a high official said this is not a situation where you have to stop drinking the water. At that same time the mayor said we're not Flint. In fact probably Jacksonville is worse than Flint in terms of the widespreadness. And what do you say to the risk to the your friend on the other side who said you're just taking that out of context. You've relied on the articles that have other there's lots of guidance and you've never alleged that if you took the guidance that were if the city residents took the guidance that was given to them by the city that it would not be safe to drink drinking water. All you know the flushing of the pipes and all that stuff. So they are not out of context. I submit they are in context. We're on the rule 12. So our allegations have to be accepted as true. But their guidance and again this is probably a matter for further development but their guidance is actually wrong made it worse. They said boil the water. That makes lead worse. Yeah but there in that paragraph I agree I focused on that one. You then yourself pled see enter as only dangerously ignorant. What case would say dangerous ignorance is deliberate indifference. Right. Well in other words it looks like they're flailing they're trying to warn they may be scientifically inept. But you described it as dangerous ignorance. Right. It is. I don't think that's the floor. We're not saying it is only dangerously. OK. It's also untrue. And we have pleaded that they knew it was untrue. OK. So again I don't think this is the proper province for rule 12 but they mentioned over and over again these attachments to the complaint. And one of the big ones that they focus on is the EPA report that's exhibit 7 starts at ROA 1590. And they say this is with respect to the changeover in the water from one source to the other. One source to a much more acidic source which causes the lead to leach from the pipes into the water into the homes. They say the EPA report exonerates us. Well if you read the EPA report what it says doesn't exonerate them at all. It says that the EPA inspectors observed that prior to the source and treatment change no evidence was provided by the city of Jackson that corrosion control study or water quality evaluation has been completed. City did not make a formal request to the state regulators to change its source from groundwater to surface water. That hardly exonerates them. But that illustrates the point. They may have reasons for what they did. But we don't know those yet because we don't have discovered. What we know is what we've pleaded. Those have to be accepted as true at the rule 12 stage. And we've more than pleaded in our judgment or in our argument a case here under the portion. So we ask that this court reverse the district court's dismissal on rule 12. Thank you. We have your argument. We appreciate all the evidence in this case. The en bas court will stand adjourned.